UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALVIN DWAYNE FRAZIER,

           Plaintiff,           Civil Action No. 20-11105

v.                                       Matthew F. Leitman
                                       United States District Judge

HEIDI WASHINGTON, *et al.*,       David R. Grand
                                       United States Magistrate Judge

           Defendants.
_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 49, 54, 66)

Plaintiff Alvin Dwayne Frazier ("Frazier") is a state prisoner in the custody of the Michigan Department of Corrections ("MDOC"). He currently is incarcerated at the G. Robert Cotton Correctional Facility ("JCF") in Jackson, Michigan.

In the instant action, Frazier brings a *pro se* civil rights complaint and amended complaint,[1] which, after initial screening, contain allegations against numerous MDOC defendants of poor-quality prison meals and other inhumane conditions, religious and racial discrimination, improper handling of his legal mail, and retaliation. Frazier also brings a claim against Nurse Kristin Austin ("Austin"), a Corizon Health employee, for deliberate indifference to a serious medical need.

---

[1] Frazier filed his initial complaint on March 26, 2020. (ECF No. 1). He then filed a motion for leave to file an amended complaint and an amended complaint on July 15, 2020. (ECF Nos. 6, 7). Due to Frazier's *pro se* status, and the fact that these more recent filings seem to attempt to supplement Frazier's original complaint, the Court will construe the allegations made in all three filings as if they were jointly filed in a single amended complaint.

On August 9, 2021, MDOC employees Dawn Hursh, Brent Trotta, Tiffani Kisor, Gordon Bloom, Quentin Kizer, Scott Prins, Gordon Hill, Michael Heskett, Cleveland Blunt, Glen Walker, and William Hokenson[2] filed Motions for Summary Judgment on the Basis of Exhaustion. (ECF Nos. 49, 54). Frazier filed a response to these motions on September 2, 2021 (ECF No. 59), along with an affidavit and exhibits (ECF Nos. 56, 61). On October 11, 2021, the MDOC Defendants filed a reply brief in support of their motions for summary judgment. (ECF No. 65).

On November 8, 2021, Austin also filed a Motion for Summary Judgment Based Solely on the Failure to Exhaust Administrative Remedies. (ECF No. 66). On December 14, 2021, the Court issued an order extending the deadline for Frazier's response to Austin's motion until January 4, 2022. (ECF No. 74). Despite the fact that this deadline has passed, Frazier has not responded to Austin's motion and, thus, it is unopposed.

An Order of Reference was entered on June 28, 2021, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. § 636(b). (ECF No. 29). Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody. *See* E.D. Mich. LR 7.1(f). Here, the Court finds that the facts and legal issues are adequately presented in the briefs and on the record, and it declines to order a hearing at this time.

I.   **RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants'

---

[2] Although the remainder of the defendants identified above filed their motion for summary judgment before Hokenson waived service, he subsequently filed his own motion, incorporating the arguments made in their earlier filing. (ECF No. 54).

2

Motions for Summary Judgment **(ECF Nos. 49, 54, 66)** be **GRANTED**. **IT IS FURTHER RECOMMENDED** that Frazier's claims against Defendant Heidi Washington also be dismissed for failure to exhaust.

## II.  REPORT

### A.  Background

As set forth above, Frazier is an MDOC prisoner who brings this lawsuit challenging the conditions of his confinement at JCF, where he currently resides. The Court screened Frazier's complaint and amended complaint pursuant to 42 U.S.C. § 1915(e) (ECF No. 12) and allowed the following claims to proceed past that initial stage:

- Claim 1: Since about November 2019, Frazier was served food that is unhealthy, deficient in nutrients, and can cause diabetes and other health ailments, and his complaints about the food were ignored. (ECF No. 1, PageID.3-4, 6, 10-14).

- Claim 2: On an unknown date before March 2020, Corrections Officers ("COs") Dawn Hursh, Brent Trotta, and William Hokenson, Deputy Warden Tiffani Kisor, and Nurse Jane Doe retaliated against Frazier for filing grievances and complaints against COs and for requesting school supplies by shaking down his cell, taking his typewriter to prevent him from completing school assignments, and firing him from food service jobs. (ECF No. 1, PageID.5, 6; ECF No. 6, PageID.66, 72, 74). COs Hursh and Hokenson also subjected Frazier to racial discrimination, perhaps in retaliation for the grievances and complaints he made. (ECF No. 1, PageID.5; ECF No. 6, PageID.75).

- Claim 3: From April 27, 2020, to May 5, 2020, Frazier was subjected to inhumane conditions while confined in the L-Unit because he was not allowed to shower, have clean laundry, or "have personal needs." (ECF No. 6, PageID.71-73). Lieutenant Cleveland Blunt, CO Quentin Kizer, Sergeant Michael Heskett, CO Glen Walker, CO Scott Prins, and Nurse Practitioner Kristin Austin allegedly ignored Frazier's complaints about these conditions. (*Id.*).

- Claim 4: Sometime after March 2020, CO William Hokenson violated

3

>    Frazier's right to practice his religion by taking his prayer requests, which he passes out daily to other prisoners.  (ECF No. 6, PageID.75).
>
> - <u>Claim 5</u>: On April 27, 2020, Sergeant Hill and Officer Bloom (and/or other JCF employees) improperly opened Frazier's legal mail in his absence (despite his request to be present) and improperly handled his legal mail by placing it in areas where it could be accessed by other COs and prisoners. (ECF No. 6, PageID.70, 71).

In their motions, Defendants argue that summary judgment is appropriate on Frazier's first four claims[3] because he failed to properly exhaust any grievances against them stemming from these allegations.  The Court agrees.

### B.     Standard of Review

Pursuant to Rule 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011).  A fact is material if it might affect the outcome of the case under governing law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party.  *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must identify particular portions of the record that

---

[3] Defendants do not discuss Claim 5 in their motion for summary judgment; however, for the reasons set forth herein, this claim is also subject to dismissal.

4

demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

**C.  Analysis**

    *1.  The PLRA's Exhaustion Requirement*

Under the Prison Litigation Reform Act ("PLRA"), a prisoner may not bring an action, "under [§ 1983] or any other Federal law," with respect to prison conditions until all available administrative remedies have been exhausted. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). This "exhaustion" requirement serves two main purposes: it promotes efficiency by encouraging the resolution of claims at the agency level before litigation is commenced, and it protects administrative authority by allowing the agency an opportunity to correct its own mistakes before being haled into federal court. *See Woodford*, 548 U.S. at 89. The Supreme Court has held that this "exhaustion requirement requires proper exhaustion." *Id.* at 93. Proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90.

5

Failure to exhaust is an affirmative defense that must be raised by a defendant, and on which the defendant bears the burden of proof. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Vandiver v. Corr. Med. Servs., Inc.*, 326 F. App'x 885, 888 (6th Cir. 2009).

The PLRA attempts to eliminate unwarranted federal court interference with the administration of prisons and thus seeks to "affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 525 (2002). The PLRA also was intended to "reduce the quantity and improve the quality of prisoner suits[.]" *Id.* at 524. Thus, it is essential for a plaintiff to properly exhaust his administrative remedies before filing suit by filing a grievance that complies with the prison grievance system's requirements regarding the allegations made in his complaint.

An untimely grievance, or otherwise improperly filed grievance, even though appealed through all steps of a grievance procedure, does not fulfill the exhaustion requirement of 42 U.S.C. § 1997e(a). *See Northington v. Abdellatif*, No. 16-12931, 2019 WL 9406499, at *7 (E.D. Mich. Aug. 16, 2019) ("The exhaustion requirement is mandatory and requires a prisoner to comply with state procedural rules such as time limits for filing grievances and other critical procedural rules."). Permitting an untimely or otherwise improperly filed grievance, even though appealed through all steps, to satisfy § 1997e(a)'s requirement "would permit a prisoner to bypass deliberately and flagrantly administrative review without any risk of sanction." *Woodford*, 548 U.S. at 97. The *Woodford* court explained:

> A prisoner who does not want to participate in the prison grievance

6

> system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction…. For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

*Id.* at 95. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

### 2. The MDOC's Exhaustion Procedures

In Michigan's correctional facilities, prisoner grievances are governed by MDOC Policy Directive 03.02.130, entitled "Prisoner/Parolee Grievances" (the "Policy"). (ECF No. 49-2). A state prisoner must first complete the process outlined in the Policy – including pursuing a grievance through "all three steps of the grievance process" – before he can file a lawsuit challenging the alleged unlawful conduct. (*Id.* at ¶ C). The Policy provides that if a prisoner cannot resolve his dispute with the staff member involved within two days after becoming aware of the grievable issue, he has five business days to file a Step I grievance. (*Id.* at ¶ Q). After receipt of the grievance, the grievance coordinator must determine if the grievance should be rejected pursuant to the Policy. (*Id.* at ¶ Y). If the grievance is rejected, the grievance response shall state the reason for the rejection without addressing the merits of the grievance. (*Id.*). If the prisoner is dissatisfied with

the Step I response, he may submit a grievance appeal to the Step II grievance coordinator within ten business days after receipt of the Step I response, or if no timely response is received, within ten business days of the date the response was due. (*Id*. at ¶ DD). After receipt of the grievance, the grievance coordinator must determine if the grievance should be rejected pursuant to the Policy; if so, the grievance response shall state the reason for the rejection without addressing the merits of the grievance. (*Id*. at ¶¶ EE). If the grievant is dissatisfied with, or does not receive, a Step II response, he has ten business days within which to file a final appeal at Step III. (*Id*. at ¶ HH). Again, an inmate may only pursue a claim in court if he has complied with his obligations at each of these three steps.

       3.    *Frazier Fails to Raise a Material Question of Fact as to Whether He Exhausted His Remaining Claims Against Defendants*

In their motions, Defendants argue that Frazier failed to exhaust Claims 1-4 against them because he did not properly file a grievance related to any of the events at issue in those claims. (ECF No. 49, PageID.296-308). Defendants attach to their motion a copy of Frazier's "MDOC Prisoner Step III Grievance Report," and its underlying grievance documents, which show that, as of January 2021, he pursued 32 grievances to Step III while at JCF. (ECF No. 49-3). The vast majority of those grievances were filed well before the earliest events in question in this case, and thus necessarily could to not have exhausted any of Frazier's instant claims. However, nine of the grievances arose out of conduct between August 2019 (three months before the earliest date referenced in the complaint or amended complaint) and July 15, 2020 (the date he filed the amended complaint).[4] These

---

[4] Notably, there are no Step III grievances related to Nurse Austin. (ECF No. 49-3).

grievances are summarized below, and those that relate – at least arguably – to the claims before the Court are highlighted:

| Grievance No. | Issue Grieved at Step I | Claim No. | Grievance Results |
|---|---|---|---|
| JCF-19-08-1497-28e (ECF No. 49-3, PageID.341-45) | Delay of legal mail sent in January 2019 | | Rejected at Step I as untimely; rejection affirmed through Step III |
| JCF-19-08-1574-28b (ECF No. 49-3, PageID.361-65) | Multiple undated issues relating to his legal mail | | Rejected at Step I as vague; rejection affirmed through Step III |
| JCF-19-10-1876-28i (ECF No. 49-3, PageID.366-70) | Law library being closed | | Rejected at Step I for failure to resolve the issue prior to filing; rejection affirmed through Step III |
| JCF-20-07-1354-28f (ECF No. 49-3, PageID.371-75) | On July 2, 2020, Hokenson took his blank prayer requests, which he passes out to other prisoners. | 4 | Rejected at Step I because Frazier did not obtain the grievance form from the grievance coordinator while he was on modified access; rejection affirmed through Step III on December 7, 2020. |
| JCF-20-04-0789-27c (ECF No. 49-3, PageID.376-80) | On April 12, 2020, healthcare declined to see him because protocols restricted healthcare visits to COVID or life-threatening issues | | Rejected at Step I as grieving Director's Office Memoranda on COVID; rejection affirmed through Step III. |

9

| Grievance No. | Issue Grieved at Step I | Claim No. | Grievance Results |
|---|---|---|---|
| JCF-20-04-0799-28c (ECF No. 49-3, PageID.381-85) | On April 19, 2020, CO Bloom gave him legal mail which had already been opened; someone else had read his legal mail earlier when he was in a different housing unit | Arguably 5 | Rejected at Step I as grieving more than one issue; rejection affirmed through Step III |
| JCF-19-10-1775-28b (ECF No. 49-3, PageID.386-90) | Dereliction of duty by (non-defendant) RUM King | | Rejected at Step I as vague; rejection affirmed through Step III |
| JCF-20-04-0788-27z (ECF No. 49-3, PageID.391-95) | Living conditions in K-Unit from April 12 to 19, 2020 | | Rejected at Step I as non-grievable issue to be addressed at Warden's Forum; rejection affirmed through Step III |
| JCF-19-10-1776-28a (ECF No. 49-3, PageID.396-400) | Dereliction of duty by (non-defendant) RUM King | | Rejected at Step I as duplicative of JCF-19-10-1775-28b; rejection affirmed through Step III |

In their motion for summary judgment, Defendants argue that, of the 32 Step III grievances that Frazier pursued arising out of JCF, only one grievance – JCF-20-07-1354-28f (the "JCF-1354 Grievance") – was related to the claims asserted in Frazier's complaint or amended complaint. (ECF No. 49, PageID.306). But even the JCF-1354 Grievance, which grieved the issues raised in Claim 4 – namely, that Hokenson took Frazier's prayer requests, which he passes out daily to other prisoners – did not exhaust this claim against

10

Hokenson because it was properly rejected at Step I due to Frazier (1) being on "modified access" with respect to the grievance process at the time, and (2) not adhering to the requirement that he obtain a grievance form from the grievance coordinator. (ECF No. 49-3, PageID.371-75; ECF No. 49-2, ¶¶ JJ-MM ("A prisoner or parolee who files an excessive number of grievances (three within a 30 calendar day span) that are rejected or the prisoner is found guilty of misconduct for filing an unfounded grievance as set forth in Paragraph M, may have access to the grievance process limited by the Warden or FOA Region Manager for an initial period of not more than 90 calendar days. . . . While on modified access, the prisoner or parolee shall be able to obtain grievance forms only through the Step I Grievance Coordinator. . . . If a prisoner or parolee on modified access attempts to file a grievance using a form not provided by the Grievance Coordinator, the Grievance Coordinator may reject the grievance in accordance with Paragraph J.")). That rejection was affirmed through Step III on December 7, 2020.[5] (*Id.*).

In his response to Defendants' motion, Frazier discusses the JCF-1354 Grievance, alleging that Hokenson has harassed and mistreated him since 2018, and then makes various unrelated allegations of harassment and mistreatment by other individuals. (ECF

---

[5] Moreover, even if JCF-1354 had not been rejected, it still could not have properly exhausted any claims against Hokenson because it was rejected at Step III on December 7, 2020, which was *after* Frazier filed his amended complaint. *See, e.g., Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) ("we must dismiss plaintiff's complaint because he filed his federal complaint before allowing the administrative process to be completed"); *Hopkins v. Ohio Dep't of Corr.*, 84 F. App'x 526, 527 (6th Cir. Dec. 4, 2003) ("[w]hen a prisoner fails to exhaust his administrative remedies before filing a civil rights complaint in federal court, or only partially exhausts administrative remedies, dismissal of the complaint is appropriate" because "[e]xhaustion may not be completed after a federal complaint has been filed").

No. 59, PageID.547-51). He does not, however, contest that he was on modified grievance access at the time he filed the JCF-1354 Grievance, or that, contrary to the Policy's explicit requirements, he failed to obtain a Step I form for the JCF-1354 Grievance from the grievance coordinator before he filed it.⁶ (*Id.*). Therefore, the Defendants' evidence establishes that Frazier did not properly exhaust the JCF-1354 Grievance – the only grievance relevant to Frazier's Claims 1-4 – and Frazier failed to raise a material question of fact on that issue.

Frazier makes several other arguments in his response to Defendants' motions, all of which are difficult to decipher, and none of which change the analysis. First, he asserts that he "exhausted all grievances administrative PLAR [sic] MDOC remedies except for times when government officials numerouse [sic] times priors and most recent made them unavailable for me to exhaust[.]" (ECF No. 59, PageID.550-51). However, in support of his argument that he has been retaliated against, making it impossible for him to exhaust grievances related to the events at issue in this complaint, he cites to misconduct tickets that were issued in April 2021, long after his submission of the JCF-1354 Grievance and his filing of the complaint and amended complaint in this case. (*Id.*, PageID.551-52). Even assuming Frazier's allegations are true – that he was retaliated against in April 2021 – this

---

⁶ The law is clear that being on modified grievance access status does not render the exhaustion procedures "unavailable" to the prisoner, and thus does not excuse him from having to properly exhaust administrative remedies. *See Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 446 (6th Cir. 2005); *see also Jackson v. Lewis*, No. 20-00148, 2021 WL 3555771, at *4 (W.D. Mich. May 18, 2021) ("The Sixth Circuit has held that modified access to the grievance procedure does not deny a Michigan prisoner the right or ability to seek redress for meritorious grievances. Rather, it merely requires the prisoner to obtain permission from the grievance coordinator to file a grievance.").

would not have prevented him from exhausting the grievances discussed above, all of which were filed in 2019 and 2020.

Frazier also references Grievance No. JCF-20-04-0799-28c, which arguably pertains to Claim 5, in which he alleged that, on April 19, 2020, CO Bloom gave him legal mail which had already been opened. (ECF No. 59, PageID.561-62). Although Frazier appears to characterize Defendants' argument that this grievance was not properly exhausted as a "sham" and a "hoax" because CO Bloom subsequently retaliated against him for "reporting him reading my legal mail" (*Id.*), a subsequent retaliation has nothing to do with whether he properly exhausted the previously-filed grievance. Moreover, although Frazier's Step I grievance is somewhat difficult to read, he does not dispute that it was rejected at Step I as grieving more than one issue and that rejection was affirmed through Step III. (*Id.*; ECF No. 49-3, PageID.381-85). Thus, Frazier has presented no evidence refuting the fact that this grievance was not properly exhausted.

Similarly, Frazier refers to Grievance No. JCF-20-04-0788-27z ("the JCF-0788 Grievance"), in which he grieved the living conditions in K-Unit from April 12-19, 2020, but then goes on to complain about the "inhumane treatments" he received while confined in L-Unit (such as not being able to take a shower or have clean laundry). (ECF No. 59, PageID.563). He does not argue that the JCF-0788 Grievance pertains to the living conditions in L-Unit, which are at issue in his amended complaint, nor does he argue that he properly exhausted the JCF-0788 Grievance. Because a grievance about specific conditions in one unit does not exhaust claims related to different conditions in a different

13

unit, Frazier's reliance on this grievance does not help his cause.[7]

For all of these reasons, Frazier has failed to raise a genuine issue of material fact that he did not properly exhaust his remaining claims against Defendants. Thus, Defendants' motions for summary judgment should be granted.[8]

### III. CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Defendants' Motions for Summary Judgment **(ECF Nos. 49, 54, 66)** be **GRANTED**. **IT IS FURTHER RECOMMENDED** that Frazier's claims against Defendant Heidi Washington also be dismissed for failure to exhaust.

Dated: January 20, 2022  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
  United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to

---

[7] In his amended complaint, Frazier alleges that, on May 4, 2020, he informed Nurse Austin of his issues related to his "unhumane [sic] living conditions and personal needs" on L-unit but was met with no resolution and was denied medical care when he came into contact with another inmate's bodily fluids. (ECF No. 6, PageID.73). However, the grievance records discussed above give no indication that Frazier ever filed a grievance regarding this issue, let alone one that named Nurse Austin and was properly exhausted.

[8] Although there is no indication that Defendant Heidi Washington has been served in this case, the arguments advanced in the other Defendants' motions are universal, and apply equally to her. Thus, dismissal of Frazier's claims against Washington for failure to exhaust is appropriate.

file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 20, 2022.

                                                    s/Eddrey O. Butts  
                                                  EDDREY O. BUTTS  
                                                  Case Manager